## ANDRUS v. BERKSHIRE POWER CO.

### (Circuit Court, D. Connecticut. April 20, 1906.)

### No. 1,207.

WATER COURSES—ABATEMENT OF DAM—ESTOPPEL.

The owner of a farm on a river injured by overflow caused by defendant's dam below, built to furnish power for electric light plants, *held* estopped to maintain a suit to enjoin the maintenance of the dam, which would result in at once stopping the operation of such plants, by his acquiescence in the building of the dam and his prior statement to defendant's representative who called on him that he would "wait and see" before determining what he would do in case injury should result to his farm.

Bill for Injunctive Relief. Heard on the merits in open court under stipulation.

C. Walter Artz, for plaintiff.

Gross, Hyde & Shipman, and Henry Stoddard, for defendant.

PLATT, District Judge. The necessity for immediate action prevents anything more than the briefest memorandum.

Jurisdiction is conceded. The plaintiff resides in Sheffield, Mass., and owns a farm on the bank of the Housatonic river. Said farm is adapted to and used for dairy purposes. The defendant has erected a dam across said river in the town of Canaan, Conn., which sets the water of the river back upon said farm, and thereby seriously damages the same. Said damage is such as to practically deprive the plaintiff of the right to use the farm for dairy purposes.

The defendant is a trespasser upon plaintiff's land and will continue to be a trespasser so long as said dam shall be continued in operation. The plaintiff demands mandatory injunctive relief which shall be drastic enough to bring about a discontinuance of the trespass. Such relief would, at the same time, compel the defendant to absolutely stop the use of its dam for any purpose. In the fall of 1904, Mr.

Roraback, acting as a promoter, called upon the plaintiff, and talked with him about the scheme. He told the plaintiff that the building of the dam was not expected to make any appreciable rise in the river as far up as his farm, but as a precautionary measure, he wanted to tell him about it, and ask him what he would do if damage should follow the building of the dam. His answer practically was, "Well, we don't know, we can't tell, let us wait and see." No protest was entered against the work. No intimation that if damage did come there would be an attempt to maintain his strict legal rights to the extent of insisting that the dam should come down, if he were seriously injured. Build the dam, and experience will teach us. This was an invitation to Roraback to organize the defendant as a responsible entity and to lead it to invest its money, long before anything had been done except trifling preliminary engineer work.

Defendant is a public service corporation and is engaged in furnishing electric light and power to the towns of Norfolk, Canaan and Sharon, and to many inhabitants in said towns, and the demand is constantly increasing. If the relief asked for were granted, it would force the defendant to abandon the enterprise, and relegate the people of those towns to kerosene and candles. In such a situation it is not to be presumed that the plaintiff would be a hard taskmaster, but the temptation to use improperly the power bestowed upon him would jar many a conscience. During the building of the dam neither plaintiff nor defendant knew that its erection would cause such serious damage to the plaintiff, or whether it would in fact cause any damage. In the bill the plaintiff charges that the defendant did know it, and fraudulently concealed such knowledge from the plaintiff. If this allegation were supported by proof, it would put a different face upon the matter. During the hearing counsel for the plaintiff was told that it was important to sustain that allegation. He bowed acquiescence, and doubtless appreciated the point, but I can find no scintilla of proof which even glances in that direction. The dam was completed and the gates closed on September 12, 1905, and the damage thereupon became at once manifest. And from then during the fall of 1905, and well into January, 1906, conferences were had between divers parties representing the defendant and the plaintiff regarding his damages. He exhibited the various elements of damage at length, and with considerable force, and at last insisted upon receiving $5,000 in cash therefor, which was far more than defendant felt that it ought to pay. All these negotiations proceeded without any positive demand from the plaintiff to the defendant that the nuisance should be abated. It is true that several times during the different conferences, the plaintiff said that he would rather have the water off his land than to take money for his damage, but such statements appear to have been in the way of trade talk, and to have been put forth as a point upon which to base a demand for larger damages. This does not appear to be a case in which the plaintiff can of right demand that the nuisance shall be abated. His actions estop him from now making such a claim. The plaintiff wishes an early review of this decision, and there appears to be no way to bring that about, except to dismiss the bill.

The situation is not a pleasant one. The only question which appears debatable to the court is this: The plaintiff has come into a court of equity in pursuit of his rights. Others have followed him who do not appear on this record, and still others might intervene. Does not the situation demand that the ordinary methods of chancery practice shall be put into operation, so that equal and exact justice may be done to all parties, whether land owners who have been trespassed upon, or the owners of the dam who have trespassed? If the appellate court differs from me on the main question, the difficulties vanish at once. If, on the other hand, it shall happen to agree with me that the case does not call for an immediate destruction of the water power, it is hoped that before the control of this court over the matter in hand shall have gone forever, it may think it wise to make some suggestions touching this second branch of the inquiry.

Whenever the plaintiff desires to avail himself of his right of review, let a decree be entered dismissing the bill, but let it only be done upon the distinct understanding that an appeal shall be entered at once and prosecuted to effect.

Having this day filed a memorandum showing briefly my reasons for dismissing the bill, it becomes at once important to act upon defendant's motion for the appointment of a master, or of a committee, to assess plaintiff's damages. I am entirely opposed to appointing a committee under defendant's charter. If any action were to be taken, it would seem that the time honored chancery practice should be followed.

To grant the motion, however, will serve to defer for a long time the final settlement of the plaintiff's rights, and during that delay the dairy farm may suffer sadly. I shall deny the motion, and will cooperate in every way with the defendant in its efforts to obtain a review of this order, as I have already done with the plaintiff on the main question.