### GRIFFITH v. BERKSHIRE POWER CO.

#### HUGHES v. SAME.

(Circuit Court, D. Connecticut. December 31, 1907.)

#### Nos. 1,208, 1,209.

1. ESTOPPEL—WATERS AND WATER COURSES—FLOODING LANDS—ABATEMENT OF DAM.

A landowner whose land is flooded by a dam on the stream below him may be estopped to assert his right to a mandatory injunction to abate the dam, even after its completion, by negotiations for a settlement which induced the owner of the dam to believe that damages would be accepted, in which belief it made settlements with other landowners and expended money in the extension of its plants, dependent on the dam for power.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Estoppel, §§ 264–275.]

2. SAME.

Owners of riparian lands flooded by a dam on the stream below built by a company to furnish power for electric light plants, who induced representatives of the company to believe that, when the extent of the injury to their lands should be known, they would accept payment of damages therefor, and who made no objection to the building of the dam are estopped to demand relief by a mandatory injunction to abate the dam after it has been completed, and the company's plants have been built and put into operation, and will be left to their remedy by actions at law for damages or in equity by an assessment of damages as for a continuing trespass.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Estoppel, §§ 264–275.]

In Equity. Suits for injunction. On final hearing.

C. Walter Artz, Henry A. Parmelee, and Henry H. Townshend, for plaintiffs.

Henry Stoddard and Arthur L. Shipman, for defendant.

PLATT, District Judge. At the outset these cases and the Andrus Case, 145 Fed. 47, came up together seeking preliminary injunctions on affidavits.

After hearing them, I indicated an indisposition to grant the mandatory relief prayed for; but, to facilitate matters, offered to hear either one of the cases on the merits in open court, as our rules permit, giving counsel for the plaintiffs his choice as to which one he would select. His knowledge of the matter was as comprehensive then as now. He chose the Andrus Case, 145 Fed. 47, and, as soon as the hearing was concluded, injunctive relief was refused, after an offer to permit the usual procedure in damages to go forward had been rejected. This action was sustained by the Court of Appeals (147 Fed. 76, 77 C. C. A. 248) and certiorari denied by the Supreme Court (203 U. S. 596, 27 Sup. Ct. 784, 51 L. Ed. 333). Since that time the matters now passed upon have been vigorously pressed. After listening to the arguments, I am persuaded that counsel acted advisedly when he picked out the Andrus Case for the first final hearing. The obstacles in the Griffith Case certainly are greater, and the same thing may be said of the Hughes Case, unless it be admitted that negotiations as to the sale of the premises outright, or for a certain amount to be paid by way of damages, must have taken place before the trespass was committed to have any weight as an estoppel or waiver. I cannot so understand the law.

Such doings by the complainants after the trespass, as would lead the defendant to believe that a money compensation might be arrived at, would and did affect the defendant's position, both in regard to other settlements with landowners and in regard to the extension of its power for use in electric lighting and otherwise. From the standpoint of waiver alone, barring the question of a strictly equitable estoppel, the acts of the plaintiffs deprived them of the right to enforce by injunction their full original rights. The rule of greater convenience also had weight with me in the Andrus Case, and, although not specifically discussed by the higher court, must have operated there also. I think it is entitled to considerable prominence in reaching a final conclusion. Is it better that a dairy farmer should suffer travail of spirit, or that many people should endure darkness and be deprived of motive power? It is as plain as a pikestaff that an injunction would place the plaintiffs in a position where they could hold a pistol at the head of the defendant corporation, and demand what price they please for their lands. It is beyond imagination to picture them as insisting upon the removal of the dam, and resuming their dairy farming in pastoral seclusion and simplicity. If it were to be so, however, the removal, besides injuring the defendant and many other innocent people, might do a real harm to the farmers themselves; for it is fair to assume that, by accepting the alternative which is open to them, they would be in a better condition than would await them after the destruction of the dam had restored them to their primeval state of peace and good will.

The allegations in each of the three original bills were broad enough to sustain the demand for injunctive relief, but in each there has not appeared any proof to sustain the absolutely necessary charge that be-

fore building the dam the defendant corporation knew that after it had been built the water must flood .the complainants' lands to their constant damage, and kept that fact concealed from the complainants. As the cases actually stand at this moment, the proper course to be pursued is so clear that further comment would be valueless. The plaintiffs have come into a court of equity, and are entitled to such relief as upon the facts shown such a court can grant. Injunctive relief is impossible. If the plaintiffs wish the damage to their premises to be ascertained in accordance with chancery practice, such relief is at their hands.

The acceptance of this alternative ought to be within a reasonable time. If such acceptance shall be filed within 60 days, a master will be appointed. If not, let the bills be dismissed.