136  621
p134  262
136  677

Marshall Ice Company and Carrie Nelson, C. W. Nelson, Anna W. Nelson and Matena C. Nelson, Appellants, v. George W. LaPlant.

**Pleading:** DEMURRER: LAW OF THE CASE. Where a defendant by answering elects to treat an amendment as remedying the defects on which his demurrer is based, and to raise the issue in another way, the ruling on the demurrer does not settle the law of the case.

**Riparian rights:** EASEMENT. Where the owners of a mill dam with the right to perpetual maintenance sold land bordering thereon, to be used in connection with an ice business dependant upon a continuance of the dam, receiving an enhanced value by reason of its adaptability to such use, the conveyance implied an easement by which the grantees may insist upon a continuance of the water level.

**Same.** The provision in a deed to land bordering upon an artificial body of water, that the grantors may maintain the dam and enter upon the land conveyed for making repairs and that grantees shall not change the course of the stream, rather implies a maintenance of the existing water level than otherwise.

**Same:** PLEADINGS. An allegation of ownership of land upon which a mill dam is situated and long continued maintenance of the dam, is a sufficient allegation of the right to maintain the dam; and will support an action to restrain its destruction brought by one entitled to have the water level continued.

**Riparian rights:** PRESCRIPTION. The right of riparian owners to have the natural flow of water in a stream continue unobstructed may be lost by prescription.

**Easement:** LOSS OF RIGHT. A riparian owner acquiring with his grant an easement in an artificial body of water does not lose his right therein by transferring to another the common right to maintain the existing water level.

*Appeal from Marshall District Court.*— Hon. G. W. Burn-
ham, Judge.

Monday, May 20, 1907.

Rehearing Denied, Monday, December 16, 1907.

The petition alleges that Carrie, C. W., Anna M., and
Matena C. Nelson constitute the Marshall Ice Company;
that the above-named parties had leased a tract of land,
including a portion of the bed of the Iowa river, for a term
of ten years, constructed icehouses thereon, and occupied the
same, and had conducted the ice business there ever since;
that in December, 1902, they acquired the said tract by a
deed of conveyance from Walter A. and Victor C. Fallgat-
ter and wives, the grantors, retaining title to an adjacent
and contiguous tract, whereon is located, constructed and
had been maintained for forty years a milldam six and one-
half feet high across the Iowa river; that thereby a head of
water, or water level, far back in the river and tributaries
to the height of the dam had been maintained, subject to the
reasonable use of the Marshalltown mills; that this condi-
tion existed at the time of the conveyance, and relying upon
its continuance, plaintiff expended large sums of money
in erecting icehouses and equipping the same on the premises
so conveyed; that for nearly twenty years plaintiffs and their
assignors had conducted an ice business at that location, and
built up a large trade, which, with their investment, now de-
pends on the maintenance of the water level; that the arti-
ficial condition of the water was open and apparent at all
times, and constituted an easement appurtenant to the prem-
ises purchased by plaintiffs; that the premises were purchased
and the improvements made in contemplation of the mainte-
nance of such artificial condition of the water level; that the
defendant subsequent to said purchase procured a conveyance
to himself from the grantors of the tract of land retained by

the Fallgatters on which the milldam was constructed, and it is his purpose to destroy the said dam for the purpose of lowering the water level in said river; that should this be done irreparable injury would result and practically annihilate the plaintiff's property and ice business; that said business is dependent upon the maintenance of the water level, which can only be done by continuing the dam; that all plaintiff's improvements have been made in contemplation of the water level as it is, and it is prayed that the defendant be temporarily enjoined from interfering with the dam save by the use thereof in operating the mill appurtenant thereto, and from preventing plaintiffs, or their grantees or assigns, from entering upon the premises and repair or maintain the said dam, and that upon hearing said injunction be made permanent. Copies of the lease and deed were attached to the petition, and the temporary writ of injunction granted. The plaintiff afterwards amended the petition in response to the motion for a more specific statement, which amendment need not be set out save in that it is alleged that the artificial condition of the water constitutes an appurtenance to the premises conveyed to these plaintiffs, and that the tract on which the dam is situated is charged with the servitude of maintaining such artificial condition of the water. The court then upon motion struck out that portion of the petition and amendment alleging the expenditure for improvements on the land under the lease. The plaintiffs then filed another amendment, alleging that at the time of the conveyance these plaintiffs owned ice houses and other equipments located on the premises, and that the ice business had been maintained prior thereto by virtue of said written lease with full knowledge of the grantors; that the icehouses and equipment had been used and occupied in such manner and for such purpose for many years prior to the conveyance, and have been used and occupied since; that the principal value of the premises conveyed to plaintiffs consisted in the use that might be made of them by reason of the conditions and situation. There-

upon the defendant filed a general demurrer, which was sustained by the court.

Some months later the plaintiffs filed a third amendment to the petition, alleging the leasing of privileges from riparian owners for the cutting and harvesting of ice up the river from the dam, and numerous leases were attached; that these were secured in contemplation, and their only value was based on the maintenance of conditions as they were; that these were procured at considerable expense, and their value would be destroyed by the removal of the dam. Plaintiffs further alleged that they were in full possession of the premises prior to the conveyance under the lease, and have continued without interruption since in the obvious, open, and apparent exercise of their rights, and have expended large sums of money in constructing icehouses and in their equipment for harvesting and selling ice, all of which would be a permanent injury, and they would suffer great loss by the destruction of the dam as threatened; that the immediate grantors of plaintiffs are the riparian owners of the premises below the dam and from which the water is held back, and were such at the time of the conveyance. Shortly afterwards the defendant filed an answer specifically admitting or traversing every allegation in the plaintiff's petition. The partnership was admitted, also the execution of the lease and deed, and that plaintiffs are the owners of the real estate as alleged, that the dam was constructed across the river, that the dam backed water up as stated, and that it is the purpose of defendant to remove said dam and restore the water to the condition it was prior to its construction.

Defendant put in issue all other material allegations of the petition and amendments thereto, and by way of affirmative defense the defendant alleged he is the owner of a tract of three hundred and fifty acres of land through which Asher creek, tributary to Iowa river, passes, and to which the backwater occasioned by the dam causes great

damage, and that a large amount of land owned by other parties is injured by the damming of the river; that in 1904, in an action brought by defendant against Fallgatter Bros., the then owners of the dam, to prevent raising the same by the use of flushboards, their right to use the same for the purpose of running the mill was established by grant and prescription; that thereafter this defendant, assisted by other riparian proprietors, negotiated with Fallgatter Bros. for the purchase of the real estate upon which the dam is constructed; with a view of removing the same and thereby avoiding further injury to their land; that the purchase was made with the express object of removing the dam; that this was well known to C. W. Nelson, the managing partner of plaintiffs, and that, though being aware of such negotiations, and their object, he made no objection thereto; that defendant paid the consideration in reliance upon there being no objection on the part of plaintiffs, and for this reason they are forever estopped from claiming any easement or servitude in the estate. The defendant further alleged specifically the injury to the land because of the back-up of the water due to the dam of the river, and that its removal would be of great value to the defendant and other riparian owners. The defendant further answered that the only right to dam the river was for the purpose of operating the Marshalltown Flour Mills, and upon ceasing to use the water for that purpose the right to continue the dam was terminated; that this was well known to plaintiff, and defendant denied the right of plaintiff to trespass upon his property for the repair or maintenance of the dam. Plaintiffs further alleged that the defendant had disposed of to the city of Marshalltown whatever easement or right he had, and that this defendant had no right to continue the dam in the river, and that the same was a public nuisance and in contravention of the criminal and civil laws of the state. A few days later the defendant filed a motion, supported by affidavits, asking that the temporary

writ of injunction be dissolved. This motion was sustained, and from this ruling plaintiffs appeal.— *Reversed.*

*C. H. Van Law,* for appellants.

*Boardman & Lawrence, Meeker & Meeker* and *Theo. F. Bradford,* for appellee.

LADD, J.— To the petition with two amendments the defendant interposed a general demurrer, which was sustained. Plaintiffs then filed another amendment, and to the peti-

1. PLEADING: demurrer: law of the case.

tion as so amended the defendant answered specifically every allegation of the petition and amendments, and then moved that the temporary writ of injunction be dissolved. The motion was sustained, and from this ruling the appeal was taken.

Appellee insists that the points now made by appellants were involved in the ruling on the demurrer, and that such ruling must be accepted as the law of the case. In filing an amendment to the petition after the demurrer was sustained, the plaintiffs necessarily waived any error in the ruling. *Long v. Furnas,* 130 Iowa, 504; *Frick v. Kabaker,* 116 Iowa, 503; *Frum v. Keeney,* 109 Iowa, 396; *Krause v. Keeney,* 100 Iowa, 666; *Wyland v. Griffith,* 96 Iowa, 24. This merely obviated any complaint thereof on appeal, but such ruling is not to be regarded as an adjudication in such sense that the same question may not be raised in some other way. *Geiser Mfg. Co. v. Krogman,* 111 Iowa, 503. Had the defendant moved to strike the last amendment as being a repetition of matter, in so far as material, contained in the petition, and this had been sustained, the case would be parallel with *Long v. Furnas, supra,* and the ruling on the demurrer must have been accepted as the law of the case. But the defendant filed no motion to strike, nor demurrer. He answered specifically and in detail the allegations of the original petition and amendments thereto as

completely as though no demurrer had ever been filed. This was tantamount to accepting the last amendment as curing any defect in the petition aimed at, and electing to submit the issues on the merits. *Eubank v. Whitaker,* 11 Iowa, 197; *Phillips v. Hosford,* 35 Iowa, 593. In the first of the above cases the defendant, after a demurrer to an amended petition had been sustained, answered, and upon appeal the court held that the ruling on the demurrer could not be considered, as the subsequent answer and hearing on the pleadings rendered it practically unimportant. If the plaintiff, by amending his petition, thereby waives any error in the ruling by which a demurrer thereto has been sustained, it necessarily follows that a defendant, by answering over upon the petition being amended, waives the effect of the previous ruling as to those portions of the petition at least to which he pleads issuably. This must have been the thought of appellee, for the motion to dissolve the writ of injunction was based solely on the allegations of the pleadings other than the demurrer, and no reference whatever was made to the ruling thereon. Regardless of this, however, we are of the opinion that, in traversing the allegations of the petition by answer, the defendant elected to treat the amendment as remedying its defects, if any there were, on which the ruling on the demurrer was based, and to raise the issues in another way. The ruling on the demurrer under these circumstances cannot be accepted as finally determining the law of the case.

II. The dam in controversy was constructed across the Iowa river at Marshalltown some forty years ago, and has been maintained since for the purpose of supplying water power by the use of which to operate what are known as the " Marshalltown Mills."

2. RIPARIAN
   RIGHTS:
   easement.

The effect was to raise the water level six and one-half feet. Whether the right so to do was acquired by grant, or through proceedings in eminent domain, or by prescription, does not appear from the pleadings, save for

an averment in defendant's answer that in an action between him and his immediate grantors, Fallgatter Bros., "the right of said Fallgatter Bros. to use flushboards and back-flow the water of the Iowa river by said dam for the purpose of running said mill was established by grant and prescription" in 1904. At that time Fallgatter Bros. owned the tract of land where the dam was located, and, as is conceded, had the right to maintain it for the purpose of supplying their flourmills with power. In December, 1902, they had conveyed to plaintiffs a parcel of ground adjacent and contiguous thereto, on which icehouses had been erected and equipped suitable to the harvesting of ice from the pond of water occasioned by the dam, its storage and preservation, and the distribution and sale therefrom to the people of the city of Marshalltown. Prior to this conveyance the ground had been leased by the assignors of plaintiffs, Nelson & Johnson, from a former owner. This was in 1894, and the houses were then constructed. But improvements were made, as required by the business, and considerable has been expended in betterments since the conveyance. There is no doubt but that the Fallgatter Bros. as well as their grantor well knew the purpose for which the ground was being used, and that its main value consisted in its accessibility to the ice on the river in the winter, and the opportunity afforded to harvest the same therefrom. The ground had been set apart by the lease for this particular use, which necessarily depended on the maintenance of the water level; so that, whatever may have been the original design in damming the stream, a part of the owner's land was being used for milling purposes, and another portion on which to operate the ice business, and both depended on the maintenance of the water level as it then was. The first question to be solved is whether the estate conveyed by Fallgatter Bros. to plaintiffs was accompanied by an easement appurtenant thereto by which the grantees might insist upon the continuance of conditions with respect to the

water level then prevailing. According to the text-books the implication of the grant of an easement may arise in two ways: (1) By prescription; and (2) upon the severance of an heritage by its owner into two or more parts. In the latter event a grant will be implied (1) of all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have no legal existence as easements, and (2) of all those easements without of which the enjoyment of the several portions cannot be fully had. So that, when the owner of a tract of land conveys a distinct part of it to another, he impliedly grants all those apparent and visible easements which at the time of the grant were in use by the owner for the benefit of the party to whom granted, and which are essential to a reasonable use and enjoyment of the estate conveyed. This applies to natural conditions as well as to artificial arrangements, which openly exist at the time of the sale, and materially affect the value of the part granted. Of course, no easement exists while there is unity of ownership, but, upon severance by a sale of part, easements or servitudes are created corresponding to the benefits or burdens, if any, mutually existing at the time of the sale.

The rule has been applied in a great variety of cases. A leading authority is *Lampman v. Milks,* 21 N. Y. 505, where the owner of land through which a stream flowed diverted it to another course so as to relieve a portion of the tract which had overflowed. A part of the land was sold, and a dwelling erected thereon, when the grantee of the remainder dammed up the last ditch, and caused the water to flow in its original course, thereby overflowing the yard of the purchaser of the part. In holding that the grantee of the portion retained could not return the stream to its original bed to the injury of the first grantee, the court, after stating the general rule as above, observed that " this is one of the recognized modes by which an easement or servitude is created. No easement exists so long as there is a unity of

ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts. But the moment a severance occurs, by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases, and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing to change materially the relative value of the respective parts." See *Fremont, E. & M. V. R. Co. v. Gayton,* 67 Neb. 263 (93 N. W. 163). In *Spencer v. Kilmer,* 151 N. Y. 390 (45 N. E. 865), the owner had leased a tract of land on which the lessee, in pursuance to the requirements of the lease, constructed a fish pond, supplied with water from underground drains and sluices, gathered in reservoirs on the land retained by the owner, and conveyed by pipes to the pond. Subsequently the lessee purchased the leased premises, and the owner later destroyed the appliances for the supply of water. The court held that " the thing which the defendant granted was the lot with the fish ponds then in use, constituting a very important element in the value of the property. The principal appliances for maintaining it by supplying the water were open and visible, and the defendant knew that there was no reasonable way to maintain it without them. His grant to Morrissey, we think, carried with it the right to collect the water from the springs on the land of the defendant to the east that was still unsold, and conduct the same by means of conduits and pipes to the pond, and to maintain the appliances in use for that purpose at the time of the grant."

See, also, *Paine v. Chandler,* 134 N. Y. 385 (32 N. E. 18, 19 L. R, A. 99), where the owner of two farms, one of which had long been supplied with water from the springs on the other, conveyed the one containing the springs. The court held the grantee entitled to the use of the water. See, also, *Tooth v. Bryce,* 50 N. J. Eq. 589 (25 Atl. 182); *Whalen v. Manchester Land Co.,* 47 Atl. 443 (65 N. J. Law, 206); 3 Farnham on Water & Water Rights, section 827; *Johnson v. Knapp,* 146 Mass. 70 (15 N. E. 134); *Carrigg v. Bank,* 136 Iowa, 261.

These decisions illustrate the circumstances under which the rule will be applied, and under which the right to the continuance of prevailing conditions will pass with the deed to a portion of an owner's estate. The test to be applied is whether the owner before conveying had created a condition in or added advantages to the portion of his property conveyed reasonably essential to its continual enjoyment or beneficial use and in some way dependent on the part retained. The principle is somewhat too broadly stated in Farnham on Waters and Water Rights, section 831: "If the owner of land has artificially created upon the property a condition which is favorable to one portion of his property, and then sells that portion, the grantee will take it with the right to have the favorable condition continued." See, also, *Forrest Mill Co. v. Cedar F. M. Co.,* 103 Iowa, 619, 634. The dam in controversy had continued twenty years at least before the icehouses were erected. For all that appears the land sold had not been improved in the meantime. The icehouses and equipments were constructed under the lease dated August 21, 1894, for a term of ten years permitting their erection in connection with the business and the exclusive use of the ice forming on the stream, bayous, and ponds thereon. All the improvements were made by the tenants under a contract requiring them to surrender the premises at the end of the term and permitting the removal of all buildings. The

making of these improvements was optional. They were not permanent but temporary, and did not become a part of the estate until the tenants acquired title. No change whatever was made in the land by the owner, nor any artificial advantages added which would bring the case within the above rule with respect to implied easements. See *Gormley v. Sanford*, 52 Ill. 158; 3 Farnham on Waters & Water Rights, section 830.

But the water level had been maintained by the owners of this dam for more than forty years, and, as was well known to the grantors, the value of the land conveyed to plaintiff depended on the continuance of conditions then prevailing, and it was purchased in reliance thereon. For them after selling it to have altered these conditions by the removal of the dam or to sell to another for that purpose, under the circumstances, would be an act of bad faith not to be tolerated. Men ought not to be allowed thus to trifle with the confidence of those with whom they deal. True there was no express representation or assurances that the dam would not be destroyed. But from the execution of the deed of this tract, which had long been occupied by the tenants, in connection with the pond produced by the dam, for the purpose of their business and the value of which, owing to the facilities for conducting the ice business, depended upon its continuance, all of which was open and apparent, together with the fact that the dam had been maintained for a period beyond that of the statute of limitations, it is plainly to be inferred that the conveyance was made with reference to existing conditions. In a sense the dam is to be regarded as temporary, for artificial means will be essential for its effectual maintenance. *Kray v. Muggle,* 77 Minn. 232 (79 N. W. 964, 1026, 1064, 45 L. R. A. 218); *Burrows v. Lang,* (1901) 2 Ch. 502. But from its long continuance and use at the time in furnishing water power for the mills the intention that it should be perpetual was the only natural inference, and, for this reason, as be-

tween the grantor, maintaining such a dam, and one purchas-
ing from him with reference to the artificial condition of the
water created thereby and bordering thereon, such purchaser
may proceed on the theory that such condition has been sub-
stituted for the natural condition previously existing, and
that he is entitled to have such new condition continued.
Gould on Waters, section 225; Farnham on Waters &
Water Rights, sections 827, 828. In the latter work it is
said: "The most simple way in which they (rights to the
existing condition of a water course) may be acquired is
by the sale of land or property rights with respect to the
artificial condition. The same rule applies in the case as
applies in case of a sale of lots with reference to a platted
street. After the consideration has been received for the
property or rights as they exist in relation to a certain
artificial condition of a water course, the grantor will not
be permitted to destroy that condition." This principle has
been applied in a variety of cases. See *Stratton v. Elliott,*
83 Ind. 425; *Cooledge v. Hager,* 43 Vt. 9 (5 Am. Rep.
256); *New Ipswich W. L. Factory v. Bachelder,* 3 N. H.
190 (14 Am. Dec. 346); *Murchie v. Gates,* 78 Me. 300 (4
Atl. 698); *Huntington v. Asher,* 96 N. Y. 604 (48 Am.
Rep. 652); *Blantyre v. Dunn,* 70 L. J. Ch. (N. S.) 607;
*Dunlap,* B. M. 509. See, also, *Stevens v. Kelley,* 78 Me.
445 (6 Atl. 868, 57 Am. Rep. 813); *Shepardson v. Perkins,*
58 N. H. 354. *Shelby v. Chicago & E. I. R. Co.,* 143 Ill.
385 (32 N. E. 438), is in point. Dams had been constructed
connecting an island in the Kankakee river to either bank
about forty years prior to the action for the purpose of
furnishing power to a mill, subsequently abandoned. The
natural scenery of the island, together with the opportuni-
ties for boating, rendered it an attractive resort and suit-
able as a place to which to operate excursion trains. After
negotiations with the owner, in which the company's designs
were disclosed, a part of the island was purchased by the
company, and valuable improvements constructed thereon.

Afterwards the grantor died, and his heirs in improving their lands along the river proposed to remove one of the dams. After sustaining a restraining order on the ground of estoppel, the court added: "What we have said thus far is upon the theory that the right to have the dams maintained did not pass to the railway company by the deed, but we are inclined to the opinion that said right constituted an easement appurtenant to the land, and as such passed by the conveyance. It is true the words 'with the appurtenances,' or equivalent words, were not employed in the deed, but those words, if used, would not have enlarged the scope of the deed, for what is actually appurtenant to the granted passes without such words; it being the general rule that whatever is in use for the land as an incident or appurtenance passes by conveyance of the land." Without such easement the enjoyment of the portion conveyed for the purpose contemplated could not be had, and to this end it passed as appurtenant to the estate granted under the rule stated.

Appellee rightly contends that in a case like this, as the grantee has not been in possession the statutory period, the doctrine of reciprocal rights as between the owner of the dam, the right to maintain which has been acquired by prescription, and those of the riparian owners to its continuance, has no direct application. See *Kray v. Muggle,* 84 Minn. 90 (86 N. W. 882, 54 L. R. A. 473, 87 Am. St. Rep. 332); *Smith v. Youmans,* 96 Wis. 103 (70 N. W. 1115); *Pewaukee v. Savoy,* 103 Wis. 271 (79 N. W. 436, 50 L. R. A. 836, 74 Am. St. Rep. 859); *Murchie v. Gates,* 78 Me. 300 (4 Atl. 698); *Middleton v. Gregorie,* 2 Rich. Law, 638. This doctrine and the decisions supporting it have been severely criticised on the ground that it treats permissive user or acquiescence as equivalent to adverse possession. See Farnham on Waters and Water Rights, sections 819b, 827, 839. Modern tendencies favor the equitable adjustment of conflicting claims to water

rights, however, and if, as against riparian owners, the mill-owner has acquired the prescriptive right to maintain a dam and thereby raise the water level, it would seem in all fairness that, after such riparian owners have improved their abutting property with reference to and in reliance upon a continuance of such level, the millowner ought not to be permitted to change this to their injury. As against the owner of the dam they, by making such improvements, assert the right to the water level as it exists, and, though indirectly, to the continuance of the dam, and should be accorded the same rights with reference to the existing conditions as though they had been established by nature. Without determining the question, however, but alluding to the principle as tending to confirm the purchaser's right to rely on the continuance of present conditions, we have no hesitancy in declaring that, where the owner of a dam with the right to maintain it perpetually sells land bordering on the stream obstructed thereby for a purpose dependent on the continuance of the water level so created, and receives the enhanced value due to its adaptability to such use, the conveyance carries with it as appurtenant to the estate conveyed an easement in having prevailing conditions continued.

III. Appellees urge that any implication of an easement was precluded by a reservation contained in the deed. It conveyed the land described, " with all the appurtenances

**3. SAME.**
thereto belonging," and added: " Grantors reserve the right at any time to enter upon the above-described property to inspect and maintain the milldam now upon said land and across the Iowa river, known as ' dam to Marshalltown Mills,' and reserves the right to maintain the dam as it now is, . . . also reserves the right to dig and remove sufficient dirt and stone from the hill on the south end of said lot for the purpose of repairing, rebuilding, and maintaining said dam, and reserves the right to enter upon said land for such purposes, and grantees will

not in any manner ditch said land or do any other thing thereon to change the course of the Iowa river on said land." If this amounts to anything, it is in the nature of an assurance that present conditions will be maintained in the future. It cannot be tortured into a reservation of the right to destroy or subvert the dam. No claim is made by plaintiffs to a right to interfere therewith, so long as the owners of the land on which it rests keep it in repair. It is only when they cease to do so and no longer assert the right of entering on the land conveyed to that end that plaintiffs claim the right to repair, and with this the reservation has no connection and furnishes no obstacle.

Moreover, the right of appellants to maintain and repair is not now necessary to be determined, for all that was sought by the temporary writ was to prevent the destruction of the dam. But the grant of an easement usually carries with it whatever is essential to its enjoyment, and if this be so in this case the conveyance conferred on the owner of the dormant estate the right to repair and rebuild the dam. *Huntington v. Asher,* 96 N. Y. 604 (48 Am. Rep. 652). In that case the deed to a half acre bordering on a mill pond contained a grant of " the exclusive right to take ice from the pond of the party of the first part, with the right and privilege of access for that purpose to and from the pond to the icehouse to be erected on the lot hereby conveyed." The court in holding that the privilege granted was not a strict easement but rather a profit *à prendre,* and that though the owners of the pond were not bound to maintain the dam they were not authorized to destroy it or prevent its repair, and that the grant of this privilege was in the nature of an easement appurtenant and carried with it the right to repair and rebuild the dam, said: " It does not concern or inhere in the land precisely like a right of way which is essential or convenient irrespective of the use to which the land is put, but does so relatively to that use, as in the case of land used for a mill or for the manufacture

of iron. In those cases, as in this, the use for which the land was bought, and which characterized the contract of purchase, became the essential element by which the privilege granted was to be measured and judged. The right to take ice from the pond was the one essential thing leading to the purchase of the half acre, justifying the building put upon it, and making possible the performance of the covenants for supply." See *Bradley v. Warner,* 21 R. I. 36 (41 Atl. 564).

Another contention of appellee is that, as no right in Fallgatter Bros. to maintain the dam is alleged, an easement in having this done could not have passed with the deed. But the petition does allege their ownership of the land on which the dam stands, and that it had been there forty years. This is a sufficient allegation of ownership, for the dam is presumed to be the property and subject to the control of those having title thereto. How this may have been acquired does not appear, and we are not to presume limitations on such ownership. If the right to maintain the dam was acquired by condemnation proceedings, and, upon abandonment of the use of the water power, must be removed as argued, this was proper matter of defense which was not pleaded. On the contrary, an adjudication that it was acquired by grant and prescription was set up. If by grant, what did it contain which will aid defendant? If by prescription it is a property right, and not limited to a particular use. In the absence of any allegation tending to impair the presumption that the owners were entitled to continue the property in its present condition, we cannot assume the existence of limitations or adverse interests.

*4. SAME: pleadings.*

IV. All said by counsel concerning the rights of riparian owners to have the natural flow of water in a stream continue unobstructed may be conceded. Any invasion of this right may constitute a nuisance. *Gehlen Bros. v. Knorr,* 101 Iowa, 700. But the right may be lost by grant

or prescription, and there is nothing in the record to indicate this has not happened to defendant and other riparian owners above the dam. If they have allowed the owners of the dam to acquire the right to obstruct the waters of the river by prescription or grant, they are not in a situation to complain of the injury which has resulted therefrom to their land. Having acquiesced in the maintenance of the dam for such length of time, that they may no longer be heard to complain, they are not in a situation to lose anything by its continuance, but the rather to profit largely by its destruction, and the question is not, as presented by appellee, whether the water level shall be continued to the injury of defendant and others for plaintiffs' benefit, but whether it shall be discontinued to plaintiffs' irreparable damage, and in violation of the easement conveyed, in order that defendant and other landowners shall acquire material benefits, even though this be in regaining what they had previously lost. Being no longer entitled to have the water course maintained in its original condition, they are not injured by a refusal to restore it to that condition by the removal of the dam. On the other hand, the plaintiffs, having acquired the right as an easement appurtenant to the continuance of present conditions, may insist upon their continuance for the reason that the change threatened would cause irreparable injury without damage to defendant.

V. Lastly, it is said that plaintiffs had parted with the easement, if any they had, in a conveyance to the city of Marshalltown executed February 23, 1905. That alleged grant was of " an equal right in common with the said first parties to maintain the aforesaid milldam and waterhead, or level created thereby, for the mutual benefit of the parties hereto, granting to the said city of Marshalltown, Iowa, an equal right, power, and authority to enter upon said premises last above described for repairing and maintaining

*5. Riparian rights: prescription.*

*6. Easement: loss of right.*

such milldam and the head of water created thereby." The consideration named is the payment by the city of costs to be incurred in litigation to be instituted, and all attorney's fees in excess of $100. This was not an attempt to sever the appurtenance as contended, but merely the transfer of the equal right to repair and maintain the dam, and the right to enter on plaintiff's premises for that purpose. Whether, should the owner abandon the dam, plaintiffs and others might enter thereon and maintain it, is not necessarily pertinent to our present inquiry, for the writ dissolved by the order appealed from merely enjoined the defendant from destroying the dam. The grant to the city had relation to the maintenance of the dam, and did not purport to convey the easement appurtenant to plaintiff's property. We have discussed the issues raised by the pleadings in so far as argued by counsel, and reach the conclusion that the allegations of the petition if proven are such as to warrant the relief prayed. It necessarily follows that the motion to dissolve the writ of injunction, restraining defendant from destroying the dam, without which the final relief sought would be ineffectual, should have been overruled.— *Reversed.*