KIPP & KENDALL v. COENEN & BECHTELL.

1. **Easement:** LICENSE TO ERECT BUILDING: POWER TO REVOKE. Where a railway company gave the plaintiffs a license to erect a grain house upon its grounds, at a point to be designated by an officer of the road, it was held that the purchase by the plaintiffs of a lot adjacent to the company's grounds, with the expectation of using it in connection with the building, did not render the license an easement appurtenant to the lot, and which could not be revoked by the company, nor give the plaintiffs a right of action for damages against another who, with the consent of the company, erected a building upon the site desired by the plaintiffs.

*Appeal from Shelby District Court.*

THURSDAY, DECEMBER 9.

ACTION to recover of defendants possession of certain real estate, and for damages alleged to have been sustained by being kept out of possession. The plaintiffs do not claim to hold the legal title to the land in controversy, it being conceded that the legal title is in the Chicago, Rock Island and Pacific R. Co. They claim to have acquired the right to use the land for the erection of a grain house thereon; that defendants, well knowing that plaintiffs had acquired such right, entered upon the premises and erected an elevator, and wrongfully keep the plaintiffs out of possession. The land is a part of the depot grounds belonging to the C., R. I. & P. R. Co., at the town of Harlan. The defendants are in possession under a claim of right by virtue of an agreement with the company. This agreement is not disputed by plaintiffs, but they claim that they had a prior agreement with the company of a similar character, of which the defendants had knowledge before the agreement between the defendants and the company was made.

The court rendered judgment for the defendants. The plaintiffs appeal.

*Truman & Smith* and *L. W. Ross*, for appellants.

*J. E. Weaver*, for appellees.

ADAMS, CH. J.—To justify a recovery against the defendants it is necessary that the plaintiffs should show a right
1. EASEMENT: which they could enforce against the railroad
license to
erect build- company. They claim that they have such right,
ing : power to
revoke. to-wit: an easement in the land in question. The
evidence shows that between the railroad grounds and the
street were certain lots owned by one McDonald; that the
plaintiffs purchased one of the McDonald lots to facilitate
them in the use of the grain house which they expected to
erect upon the railroad grounds adjacent thereto. They claim
that the right which they acquired under their agreement
with the railroad company to the use of the railroad grounds
for the erection of a grain house became appurtenant to the
McDonald lot.

It is doubtless true that one estate may be made servient
to another where the owner of the servient estate was not the
owner of the dominant estate at the time of the creation of
the servitude. *Gibert v. Peteler*, 38 Barb., 488. But the
relation of servitude will not be held to be created except
where such was the clear intention of the grantor. *Gibert v.
Peteler*, above cited. Whether there was such intention upon
the part of the railroad company may admit of some doubt,
taking the agreement to be as claimed by the plaintiffs. But
we do not feel called upon to determine the question, as the
case will turn upon other considerations.

If an easement existed in this case it must have been created by express grant. As evidence of the grant the plaintiffs rely upon certain letters written to them by the general
superintendent of the company, in which he says, among
other things: "I think we can accommodate you with ground
to set a grain house on at Harlan, but, as I understand the
situation, it will be necessary for you to buy some ground

between the railroad depot ground and the street on the west."

He also describes where the company wishes all the grain houses to be; he speaks of a change of the track, and informs the plaintiffs that the road-master will stake out the line for their building. No precise spot for a grain house was ever agreed upon, but the plaintiffs claim that as the general superintendent suggested the purchase of a lot from McDonald, and a lot was purchased in accordance with the suggestion, the spot thereby became designated as the ground adjacent to such lot. Conceding that the spot was designated and the negotiations completed so far as the powers of the general superintendent extended, we fail to find the evidence of a grant. The railroad company, not being a natural person, can act only through its authorized officers or agents. As the plaintiffs' claim rests upon what the general superintendent did, it was incumbent upon them to show that he had the power to grant easements in the company's lands. Possibly we should be justified in inferring that the general superintendent of a railroad company is charged with the general supervision of its affairs so far as the operating of the road and its current business are concerned. But this is quite a different thing from the power to alienate or charge its lands. It is true the plaintiffs show in evidence that the president of the company, when applied to for permission to build a grain house upon the company's ground, said that the general superintendent had charge of all such questions. But it is manifest that the power of the general superintendent could not be proven by proving what the president said about it. Besides, the most that could be inferred from what the president said was that the general superintendent had power to grant the permission requested. Conceding that he had such power we think that the plaintiffs cannot recover. Such a grant would be a mere license. A license ordinarily is revocable. If it was revocable in this case it was revoked by the putting of the defendants in possession. The plaintiffs,

however, insist that the license, if it be considered such, was not revocable. In Iowa, as well as two or three other states, it has been held that a license under some circumstances is not revocable. *Wickersham v. Orr*, 9 Iowa, 253 (257); *Beatty v. Gregory*, 17 Iowa, 109 (115); *Woolen Mills Co. v. Greer*, 49 Iowa, 490.

In these cases the licensee had gone upon the ground and expended money thereon in doing the things which he was licensed to do. But the plaintiffs in the case at bar had done nothing upon the ground except to stake out the lines for their building, and that, it appears, was not for them to do but the road-master. The plaintiffs say, however, that they expended money in buying a lot from McDonald, and that lot, they say, is valuable mainly by reason of its being adjacent to the depot grounds, and necessary to facilitate the use of the depot grounds as a site for a grain house. We cannot think that such expenditure brings the case within the rule of the cases above cited. Plaintiffs have the lot. They cannot be presumed to have paid more than its market value, and it is not shown that anything has transpired by which its market value has been impaired. If it was ever a necessary adjunct to the depot grounds we must presume that it is so still.

In our opinion the judgment of the District Court must be

AFFIRMED.