HALPIN & COMPANY v. JOHN McCUNE *et al.,* Appellants.

**Injunction:** CONTINUING TRESPASS. An injunction will lie at the instance of the owner of mineral land to restrain defendants who have entered upon the land and begun to sink a shaft and have threatened to carry away ore.

*Appeal from Dubuque District Court.*—HON. J. L. HUSTED, Judge.

THURSDAY, FEBRUARY 2, 1899.

PLAINTIFF firm, holding a mining lease of "mineral lot No. 262," in Dubuque county, brings this action in equity to restrain defendants from trespassing thereon. It is charged that defendants have unlawfully entered upon said lot, and begun to sink a shaft, and that they threaten to carry away a large quantity of ore belonging to plaintiff. Defend-

ants, among other defenses, justify their entry upon said premises by a claim of right.   There was a trial to court, and a decree enjoining defendants from working, mining, digging, or prospecting on said lot, or removing any ore therefrom, save and except they are permitted to work "on the Wharton range from their own land easterly."   The costs of the action were taxed to defendants.   From this decree, defendants appeal.—*Affirmed.*

*Longueville & McCarthy* and *Bonson & Bonson* for appellants.

*J. H. Shields* and *Alphons Matthews* for appellee.

WATERMAN, J.—The lot in question consists of about seventy-two acres, and is situated in the lead mining district in Dubuque county.   The mineral in these lands is found in crevices, which are known as "ranges." These ranges run north and south, and also east and west, but the ore is usually found in the east and west ranges.   Across the lot in question there was an east and west crevice, known as the "Hancock range."   South of this there was another, known as the "Wharton range."   Perhaps this is a sufficient description.   It will suffice to an understanding of the evidence to which we shall have occasion to refer.

II.   The land in question is owned by Margaret Ahearn, who derived title from her husband, Patrick Ahearn, now deceased.   Plaintiff holds under a lease from her.   The defendants herein are John McCune, Theodore Merritt, Richard Reilly, and Joseph Reilly.   They rest their claim of right upon two grounds:   *First,* a lease made by Patrick Ahearn, in 1875, to the Reillys; and, next, a lease made by Margaret Ahearn, in 1892, to Becket, McCune, Merritt, and others.

We will first notice the claim made under the so-called "lease" to the Reillys.   Richard Reilly testifies that, in 1875, he, with his father, now deceased, and his brother Joseph

Reilly, who is co-defendant herein, orally leased all of said lot south of the Hancock range for mining purposes, the rent or consideration being one-fifth of all mineral found "in the dry," and one-eighth of all found "in the wet." Since that time, he claims the work of mining thereon has been steadily prosecuted. His statement as to the lease is rendered somewhat improbable by the fact that it does not appear that any rent has been paid during the twenty-three years these operations are said to have been going on. Joseph Reilly repeats the terms of the lease as his brother gives them, but tells the details of the story in this way: While he, with his father and brother, were at work at a shaft on their own land, which adjoins the south part of lot 262 on the west, Ahearn came up, and James Reilly said to him, "How is it about your ground?" and Ahearn replied, saying: "By gorry, you are welcome to it. Nobody will ever get them but yous. That you can have the exclusive right of my property south of the Hancock range. Work at it when you can, and the best you can." Margaret Ahearn testifies that the only right her husband gave the Reillys was to work the Wharton range. She mentions no consideration to be paid. According to her story, it was only a permission given. Taking the positive testimony in connection with the circumstances, and we are inclined to think that the Reillys never had any other right than a mere license. This was revocable at the will of the licensor, and it was in fact revoked by Margaret Ahearn. *Kipp v. Coenan,* 55 Iowa, 63. We do not find that the Reillys had been at any expense in working the Ahearn land, so as to bring this case within the rule announced in *Upton v. Brazier,* 17 Iowa, 153, and other cases in which we have held that a license cannot be revoked.

III. But, if it can be said that the Reillys had a lease as claimed, we think the finding is justified that they had abandoned their rights under it. See, on the subject of abandonment of a lease similar in character. *Worrall v. Wilson,* 101 Iowa, 475. We need not go into all of the facts

on this point.    We call attention to but a single circumstance, and that is that both of the Reillys admit that they recognized the right of the lessees under the Becket and McCune lease, which was made by Margaret Ahearn in February, 1892, and which covered a part of the land that defendants say was included in the Reilly lease.

IV.    This lease to Becket, McCune, and others gave mining privileges in all that part of mineral lot 262 "situated 50 feet south of the range known as the 'Wharton range.'"    The instrument contained this condition: "And it is further agreed by both parties that, at any time said second party shall cease to work said ground for a term of twenty days, then this lease shall expire and be void."    And on the back of the lease was the indorsement: "The lessees are hereby authorized to sink a shaft on the within-described premises, with the understanding they shall fill said shaft when through with it."    Again, we say, without going into details, that we are warranted in finding that these lessees abandoned their rights under the lease, filled up the shafts they had sunk, and notified the lessor of the fact.    It is said by defendants that plaintiff's remedy is at law, if at all, the defendants being solvent, and that it has no right to an injunction.    We are not inclined to indorse this proposition. This threatened trespass is of a continuing character.    We do not think plaintiff was obliged to sit idly by, and see its property carried away day by day, with only a right to sue from time to time for the value of such as it could identify. In High on Injunctions, section 702, it is said that, where the trespass complained of is of such a character, as to probably occasion a multiplicity of suits to recover damages, the case presents such equitable features as to entitle plaintiff to an injunction.    See, also, *Troe v. Larson,* 84 Iowa, 649; *Tantlinger v. Sullivan,* 80 Iowa, 218; *Ladd v. Osborne,* 79 Iowa, 95; *Bolton v. McShane,* 67 Iowa, 208.    We are convinced that the decree rendered by the district court does full justice as between these parties, and it is therefore AFFIRMED.