Davis, J.
The trial court, over the objection of the plaintiff, allowed the defendant to propound to several witnesses this question, “What buildings or structures were necessary to be placed upon this lease in order that the same might be properly operated for oil and gas?” The circuit court held that this was prejudicial error; and for that reason reversed the judgment of the court of common pleas and remanded the cause to that court for a new trial. Thus far the proceedings by the circuit court were strictly, correct. The question called upon the witnesses to answer in regard to one of the ultimate facts which it was the province of the jury only to answer; but the jury can not be aided by the opinions of those who are not triers of the facts as to the very issues which the jury is itself sworn to determine from, evidence. Witnesses, if properly qualified, may testify as to facts of such evidential value as would assist the jury in arriving at its cqnclusions upon the determinative questions of the case; but if the vital issues involved in a cause can be decided upon the mere opinions of witnesses, however expert, as has often been remarked, juries might be dispensed with altogether. Ohio & Indiana Torpedo Co. v. Fishburn et al., 61 Ohio St., 608; Railroad Co. v. Schultz, 43 Ohio St., 270, 282, 283.
However, we think that the circuit court might safely have gone much farther. One of the assignments of error in that court was that the *286 court of common pleas erred in overruling the demurrer 'to the second and third defenses*of the defendant’s answer. ■ The defendant’s second defense met the assertion of the plaintiff’s claim of title and right to possession by alleging that the plaintiff acquired title by devise and subject to all the burdens which existed on the property at the death of the testator; and that the defendant was placed in possession of the premises in controversy by the testator, who was also the lessor in the oil lease, under an oral contract that defendant should have and hold possession of the premises so long as he was engaged as an employe of the parties who owned the leasehold and was operating the same for oil and gas; and that the defendant was in possession thereof at the time the plaintiff became seized; and that under this oral agreement and with knowledge on part of the plaintiff’s testator the defendant erected .and has occupied until now, as an employe of the owners of the lease hold, the buildings on the premises in controversy in this action.
The substance and effect of this defense is that the defendant claims to be in lawful possession of the disputed premises under a parol license from the owner to himself and not under the oil lease which was granted to his employers. That which he alleges as a contract is merely a permission, without consideration, to occupy and use the premises for an indefinite time and without the grant of a permanent interest in the land of any kind whatever. It was neither a lease nor an easement; but was merely an oral license to occupy for a temporary purpose. Being a license *287 not coupled with an interest in the land it is revocable at any time. As such it was probably revoked by the licensor when he devised the property to the plaintiff below, the defendant having no interest in the land; and certainly it was terminated by the death of the licensor, because, not being an interest running with the land, the permissive right expired with him who gave it (see 2.5 Cyc., 651, n. 61); and it was again revoked by the plaintiff below, the admitted owner of the legal title to the premises.
In some of the states, and heretofore to some extent in this state, equity will not allow an executed license to be revoked. This is upon the ground that a revocation wotild operate as a surprise and fraud upon the licensee. Probably this rule has never been applied unless the license was' connected with an attempted grant of an interest in real estate. But even in jurisdictions where it prevails to its fullest extent, it has been held that a mere naked acquiescence, such as is alleged in this case, in the construction of valuable improvements or the expenditure of money, on the faith of the license, will not render it irrevocable. Ewing v. Rhea, 37 Ore., 583; Kipp & Kendall v. Coenen & Bechtell, 55 Iowa, 63. And see Wilkins v. Irvine, 33 Ohio St., 138. In the license which we are now considering the licensor did not undertake to do anything nor to grant any interest in the land, permanent or otherwise. The licensee took the premises by mere sufferance and took possession with the possibility that the license might be revoked at any time; and any expenditures or improvements which he may have made *288 under such conditions, he made for his own convenience and at his own risk.
It scarcely needs to be mentioned that if this were an unquestionable case of an executed license, it would come within the recent ruling of this court in Yeager et al. v. Tuning et al., ante., 121.
In his third defense the defendant claims that he is in possession and entitled thereto as the tenant of the leaseholders, who have “the exclusive right to mine for and produce petroleum and natural gas from and the possession of so much of 430 acres * * * as may be necessary therefor” etc., of which the disputed premises are a part; that it is provided in the lease that the “lessee is to have all the rights and privileges necessary for the proper use and enjoyment of this lease;” and ■that the possession and occupation of the premises held by the defendant as employe and tenant of the lessees under the oil lease are necessary to the proper, economical and safe operation under the oil lease and is one of the rights granted under that lease. The demurrer challenges the sufficiency of this defense and involves a construction of the lease.
The grant in the lease is “the exclusive right to mine for and produce petroleum and natural gas from and the possession of so much of 430 acres of land * * * as may be necessary therefor.” The further stipulation that the “lessee is to have all the rights and privileges necessary for the proper use and enjoyment of this lease,” does not seem to enlarge the grant. The separation of the surface rights from the mineral rights is very plain in this instrument. The grant to the lessee *289 is exclusive as to the right to mine for and produce from the entire 430 acres, while as to the surface the grant is of only so much as may be necessary “therefor,” that is, so much as may be necessary for “mining and producing” oil and gas. The lease contains no stipulation authorizing the lessee .to sub-let to his employes any of the surface for barns, residences, yards, gardens, pasture lots, etc., as accessory to and convenient for the operation of the lessee’s mining privileges; but the right to the surface is expressly and clearly restricted to so much as may be “necessary” for mining and producing, that is for stationing and operating machinery, tanks, pipes, and the like, with the right of passage to and from the same. The lessee could therefore assume no broader rights than those named; and when he undertook to determine for himself, if he did so undertake, that he and his employes could occupy the land to an indefinite extent for his own convenience, he did so at his own risk and both he and they became trespassers as to the land so taken.
The judgment of the circuit court reversing the judgment of the court of common pleas is affirmed.
The cause will be remanded to the court of common pleas with instructions to sustain the demurrer to the second and third defenses of the answer and for such other proceedings in accord with this opinion as are authorized by law.

Judgment accordingly.

Crew, C. J., Summers, Spear, Shauck and Price, J'J., concur.