ISABELLE STAPLES and W. A. STAPLES, Plaintiffs, Appellants, v. E. R. HOBBS ET AL., Defendants.
(And one other case.)

**Mutual telephone companies:** MEMBERSHIP: EVIDENCE. In this action in which plaintiff seeks to enjoin the defendants as officers of a mutual telephone company, from disconnecting plaintiff's residence from the lines of the company, the evidence is reviewed and held insufficient to show that plaintiff was a member of the telephone company.

**Injunction:** STAY OF FINAL DECREE: JURISDICTION OF A SUPREME JUDGE TO GRANT SAME: EXECUTION FOR COSTS. In this suit to enjoin defendants from disconnecting plaintiff's residence with its telephone line, a temporary injunction issued, which was dissolved by final decree dismissing the action. Plaintiff appealed and pending the appeal procured an order from a justice of the Supreme Court staying the operation of the decree until the appeal was determined, on condition that plaintiff give a bond, which he complied with. *Held,* that the supreme court justice had jurisdiction to make the order, and upon compliance therewith it was the duty of the clerk of the district court to obey it by refusing an execution for costs on the judgment of dismissal, though no supersedeas bond had been filed.

*Appeal from Carroll District Court.*—HON. Z. A. CHURCH, Judge.

SATURDAY, DECEMBER 18, 1909.

THIS is a proceeding in equity, wherein the plaintiffs seek to enjoin the defendants, as officers of a mutual telephone company, from disconnecting plaintiffs' residence from the lines of such company.    There was a decree in the court below dismissing the petition.    Plaintiffs appeal. *Affirmed* on both appeals.

*Lee & Robb,* for appellants.

*Brown, McCrary* and *Geo. W. Bowen,* for appellees.

EVANS, C. J.—The plaintiffs are husband and wife, and own and occupy a certain farm purchased by the wife from one Hornick, a member of a mutual telephone company.    The Elk Run Mutual Telephone Company is a mutual telephone company, as its name implies, comprising a membership of twenty-five resident farmers in a certain locality in Carroll County.    It is not a corporation. By the plaintiffs it is claimed to be a voluntary association as distinguished from a partnership.    By the defendants it is claimed to be a partnership as distinguished from a voluntary association.    Its organization was and is informal and largely verbal.    The purpose of its existence is to furnish telephone facilities to its resident members.    It has a principal line which is used in common by all the members, and all the instruments connected therewith respond to every call.    It may be said also that the owners of all the instruments, in large part, respond to every call, though each has his distinct signal.    The original plan was to limit the membership to twenty-five members.    The by-laws, however, provide that additional members above twenty-five may be taken upon two-thirds vote of the existing members.    Each member supplied his own instrument and kept it in repair.    The defendant Hobbs is the presi-

dent and general manager of this company, and the defendant Duel is the lineman, who has general charge of the maintenance of the lines of the company.

The plaintiff Isabelle Staples brought this action in the first instance. Afterwards her husband, W. A. Staples, joined with her as plaintiff. The plaintiffs purport to bring their action against these defendants as officers of such company. They charge these officers, however, with committing repeated trespasses by cutting the connecting wire and disconnecting the plaintiffs' residence from the lines of the company. They charge that W. A. Staples had become a member of such company by resolution of its members, and that as such member he was entitled to maintain the telephone connection for the benefit of himself and his family. The defendants named in the petition answered. The Elk Run Mutual Telephone Company also joined in the answer as a purported defendant, and filed also a cross-bill against the plaintiffs, asking an injunction to restrain them from interfering with the lines of the company. The plaintiffs pleaded in their reply that the Elk Run Mutual Telephone Company was not a party to the case, and had no right to file any cross-bill or any other pleading therein, and they have maintained this position by argument throughout the case. The trial court appears to have acquiesced in this view. It entered a decree dismissing the petition, but it made no order relating to the cross-bill, nor did it make any reference thereto. Whether the company as such should not be regarded as a defendant by its own intervention in the case is a question which we need not now determine. The notice of appeal to this court was addressed "to all defendants." Under plaintiffs' theory it was not addressed to the Elk Run Mutual Telephone Co. as one of such defendants. Such company is therefore not in this court. What rights the plaintiffs may have as against the company as a whole can not therefore be considered. although there is some evi-

dence in the record bearing upon such question. The theory upon which plaintiffs stand here is that they tender no issue with the company as a whole. They dispute no right or power which it exercises as such. Their basic proposition is that W. A. Staples is, and was at the time of the acts complained of, a regular member of the company, and that his rights as such member were violated by the acts of the defendants Hobbs and Duel. The sole disputed question which we can consider, therefore, is, Was W. A. Staples a member? If he was, his rights as such member were clearly violated.

The power of the company to receive or reject those desiring membership, according to the will of its voting members, can not now be considered. For the determination of such question the company as such would be quite a necessary party. Nor is it material for the purpose of this case that we determine whether the company should be deemed a voluntary association or a partnership.

We turn then to the pivotal question, Was W. A. Staples a member? Anton Hornick was a member of the company. Plaintiffs purchased his farm in the fall of 1906 by a contract which provided for possession on March 1, 1907. The residence upon the property had a telephone instrument which plaintiffs claim to have acquired

1. Mutual Telephone Companies: membership: evidence.

under their purchase, and the possession of which they took and have always retained. Hornick continued in the possession of the residence up to March 4th, and the plaintiffs occupied the same in person on the next day. They had stock, however, upon the premises prior to such date, and had a person there in charge of the stock part of the time. On March 2, 1907, a meeting of the members of the telephone company was held for the transaction of business. The record of such meeting shows the following as a part of the proceedings. "Motion made that phone No. 4 be retained and allowed to Mr. W. A. Staples, provided

said W. A. Staples settle with Mr. Hornick and the company satisfactorily for same." The minutes of the meeting do not show whether this motion was carried or not. It fairly appears, however, from the oral evidence that it was carried, and we shall assume such to be the fact. The claim of membership on the part of Staples is based upon this record and nothing more. He was not present at this meeting, nor had he applied for membership. The facts explanatory of the form of the motion are that the plaintiffs claimed, and with good reason, that they had bought from Hornick his telephone, and inferentially his right to connect with the common line, subject to the consent of the company. Their claim was that this was orally included in the bargain of purchase. The by-laws of the company provided that "any member wanting to sell his interest in the central telephone line shall give the company fifteen days' notice, the company having the first chance before selling to any one else."

At the meeting of March 2, 1907, Hornick appeared as a member, and offered to sell his interest to the company. The son of the plaintiffs was present. He was asked by some member whether his father did not wish to purchase the interest. He replied that he did "if he could get it." He also stated his understanding that his father had paid Mr. Hornick for it. This statement was denied by Hornick, who contended that he had not sold his interest to the Staples. The son was unable to speak from personal knowledge on the subject. The brief dispute took place in the presence of the members present. Thereupon the motion before quoted was passed. Following this meeting the officers disconnected the line. So far as appears from the record, Staples made no attempt to reach a further agreement with Hornick, nor did he ever notify the company, or any officer or any member thereof, of his willingness to accept the conditions imposed upon the implied offer of membership contained in such motion. Hornick

emphasized his assertion of right to continuing membership by leasing his interest in the line for one year to one Potts, and Potts connected with the line in pursuance of such lease. A few days after March 2d Hornick departed for Germany, but his membership in the company was not terminated. That is to say, the company continued his membership upon its books, and regarded his membership as continued, subject to the right of Potts to use the line for one year pursuant to his lease. Whether the merits of the dispute between Hornick and the plaintiffs were with the one or the other we have no occasion to determine. The members present at the meeting of March 2d indicated their purpose to keep their hands out of it. They wanted to become involved in no controversy. The motion was an expression of willingness to accept Staples as a member in lieu of Hornick. It did not purport, however, to supplant Hornick arbitrarily. It left the parties to adjust the dispute themselves. Can it be said that such motion terminated the membership of Hornick and constituted Staples a member in lieu of him? We think not. Plaintiff was in no sense a party to the motion. He was not an applicant for membership. The motion was made upon the initiative of the members present. As already indicated, Staples did not signify an acceptance either by word or act. The motion implied a conditional offer of membership. Until such condition was met, the *status quo* was not changed. When the plaintiffs went into actual possession of their purchased residence, they found it disconnected with the main line. They connected it by the use of wire of their own. This wire was cut by the official lineman, the defendant Duel. Being again similarly connected by the plaintiffs, the wire was again cut. The same thing happened a third time, and this controversy was well begun.

We are impressed with the reasonableness of plaintiffs' claim that Hornick had sold to them his interest in this

line, and we are disposed to look with disfavor upon the conduct of Hornick. But this fact furnishes little excuse for the lack of tactfulness and wisdom evinced by the plaintiffs in precipitating this controversy. The methods adopted were neither persuasive nor neighborly. They were not calculated to open the door of social opportunity to which a "common line" is adapted. Our conclusion is that the plaintiff Staples was not a member. This finding is decisive of the issue tendered by the plaintiffs. Whether the company or its members can arbitrarily refuse membership to plaintiffs is a question which is not involved in the issues made and we express no opinion thereon. The trial court dismissed the petition, and its order must be affirmed.

II. The defendants have tacked on another appeal under this same title. The decree entered by the trial court in the case above considered ordered the plaintiff to pay the costs. The plaintiffs, having taken an appeal from the decree, obtained from Justice McClain of this court a restraining order, which continued in force the temporary injunction originally ordered by the trial court, and stayed the operation of the final decree until after the appeal could be heard in this court. This restraining order was granted on condition that a bond for $500 should be filed, conditioned that the appellants should perform the decree of the trial court in case of an affirmance here. Such bond was duly filed and approved. The issuance of the restraining order and the filing of the bond were certified to the clerk of the trial court. Notwithstanding such restraining order, the defendants demanded an execution for costs, which the clerk refused to issue because of such restraining order. Thereupon the defendants applied by motion to Hon. F. M. Powers, one of the judges of such district, for an order to compel the clerk to issue such execution. A hearing being had upon such

*2. INJUNCTION: stay of final decree: jurisdiction of a supreme judge to grant same: execution for costs.*

motion, the judge refused the order. From such refusal, defendants have ·appealed, and such appeal has been sub-mitted with that in the main case.

It is argued by defendants that no supersedeas bond was filed· with the clerk of the district court, and that nothing less than this could stay an execution. It is suffi-cient to say that the bond required by Justice McClain and filed by plaintiffs served every purpose of a *supersedeas* bond. The restraining order in terms stayed the opera-tion of the final decree. It is urged, however, that there was no jurisdiction in· this court, or in any of its mem-bers, to issue such restraining order, or to provide for á bond in lieu of a *supersedeas* bond. If that be true as a matter of law, this court was the proper place to present such question. It. could have been done by proper motion with less trouble and expense than has been incurred through the proceeding actually adopted. The restraining order purported to stay the hand of the clerk of the dis-trict court. It was his duty to obey it according to its terms. His duty would be no different if no bond had been ordered. The fact that a bond was required as a condition of such restraining order did not increase or emphasize the duty of obedience on the part of the clerk, but it did operate to protect the defendants, and to leave them without cause of complaint. It was clearly not the duty of the clerk to constitute himself an appellate tribunal to· sit in judgment upon the propriety of an order of this· court. If there was any· impropriety or lack of jurisdic-tion in the order, the defendants were entitled to raise the question, and to a summary hearing thereon in this court. There was in fact no impropriety or lack of jurisdiction in issuing the restraining order. *Manning v. Poling,* 114 Iowa, 20. The action of the clerk was clearly right. It necessarily follows that the refusal of Judge Powers to grant the order prayed for was proper, and it is affirmed. —*Affirmed.* cn both appeals. .