CANTRIL TELEPHONE COMPANY, et al., Appellees, v. BENJAMIN T. FISHER and EMERY STRUBLE, Appellants.

Telephone associations: MEMBERSHIP: TRANSFER OF SAME.  In this action by a mutual telephone company to enjoin defendants from connecting with or using its lines, it appears that the articles of

the telephone association provide for a membership fee which 'entitled the member to one phone, and that they prohibit the sale of the membership right without first offering it to the association, except that a purchaser of the farm may have the first right to purchase the seller's telephone rights. *Held*, that a warranty deed of the farm, with all appurtenances thereto belonging, did not operate to pass the vendor's membership in the association to the purchaser, and that the association is entitled to enjoin the purchaser from connecting with and using the line.

*Appeal from Van Buren District Court.*—HON. FRANK W. EICHELBERGER, Judge.

FRIDAY, NOVEMBER 15, 1912.

SUIT in equity to enjoin the defendants from connecting with and using the telephone line of plaintiffs, appellees. A temporary writ was issued and served. The defendants filed an answer and cross-bill. They also prayed in their cross-bill for an injunction to enjoin the plaintiff from disconnecting them with the telephone line. Later the defendants filed a motion to dissolve the temporary writ of injunction issued upon the prayer of the plaintiffs, and a further motion asking for the issuance of a writ of temporary injunction in their own behalf. These motions came on for hearing in vacation. Both motions were denied, and the defendants appeal from such order.—*Affirmed.*

*Joseph C. Mitchell,* and *Robert & H. B. Sloan,* for appellants.

*Walker & McBeth,* for appellees.

EVANS, J.—We avail ourselves of the following statement of the case contained in appellant's brief:

The plaintiff, the appellee, Cantril Telephone Company, is an unincorporated and acting association, claiming to be organized and acting under written articles of asso-

ciation, inaccurately called 'by-laws.' Those articles, signed by sixteen persons, are not only crude and inartistic, but in and of themselves alone fail to show the real purposes and objects of the organization, and are especially silent as to the means and procedure by which the objects and purposes, whatever they may be, are to be effected. But, when the articles are supplemented by the acts and operations under them by the association, it quite fairly appears that the objects and purposes of the association are not pecuniary profit, but the supplying of telephone conveniences in the homes of members of the association at a price not exceeding actual cost. The terms 'stock of said company,' 'stock,' 'stockholders,' and 'share of stock' are frequently used in the articles, but evidently inaccurately. Manifestly, by the term 'stockholders,' is meant the members of the association, and by the term 'stock,' the privileges appertaining to membership. One becoming a member had to pay $12 (afterwards seemingly raised to $40), which should properly be styled a membership fee, and the money so raised was doubtless used in constructing the line, and any surplus applied on operating and other incidental expenses. A member had the right to connect one phone with the association's wires, and thus have the use of the association's lines and connections for such use, having from time to time to pay such assessments as the association should make to meet the expenses of maintenance and operation.

The articles contain these provisions:

'Art. 2. The number of shares shall be limited to the number of phones said line will carry and do good service.

'Art. 3. Each stockholder shall have the right to put in but one "phone and shall have the use of said line for such phone under such regulations as may be adopted by the board of managers.' (Abs. 19, line 25.)

'Art. 14. No member shall be allowed to own more than one share of stock nor shall he be allowed to sell his share of stock until after he has offered it for sale to the company (except in case such stockholder should sell his farm, in which case the purchaser of the farm shall have the first chance to purchase such stock), at a price not to exceed the original cost of the share. Any share of stock so purchased by the company shall be held as common stock of the company, but can be sold or rented by the company

to any person who is not a stockholder at the time of purchase.'

In the case at bar, at the time the line in question was constructed, one H. H. Barnett owned the W. ½ of N. E. ¼, section 7, township 67, range 10, in Van Buren county, and said line was constructed along the south end and east side of said land; and he, being a member of the association, by virtue of such membership, connected a phone in the dwelling house on said lands with said line, and while he owned said lands continued to use said phone and line. On October 28, 1909, said Barnett entered into a written agreement with the defendant B. T. Fisher, whereby he sold said lands, 'together with all appurtenances thereto belonging' to the defendant, and pursuant to said contract on November 5, 1909, deeded, by warranty deed and without any reservations, said lands to defendant Fisher, who under said deed went into possession and has ever since been in possession by a tenant.

We are asked by the appellants not to prejudge the final merits of the case on the ground that the record is not sufficient for such purpose. It is the contention of the defendants that the plaintiff company knowingly bought a lawsuit, and that it undertook to make itself the judge of a controversy between Fisher and Burnett. The following excerpt from appellants' brief concisely presents their point of view:

It, or its smart Alecs, thought the company could, by use of a pressure that Barnett could not bring to bear, bring Fisher to an unconditional surrender—that is, Barnett could not disconnect the phone, the company could, and doubtless as the smart Alecs thought, Fisher would surrender before suffering disconnection. But they didn't know Ben Fisher. We now broadly assert that the granting of and the refusal to dissolve the injunction issued on the part of the plaintiff was an abuse of injunctional procedure, regardless of whether Fisher's good faith claim of ownership may or may not be finally determined in his favor. And it was, we assert, an abusive refusal to exercise a wholesome power, when the court refused to grant the temporary injunction prayed for by Fisher and Struble.

Fisher and Struble have an unqualified right to a full final hearing without being forced to a choice of either renouncing their claimed right or of suffering irreparable injury. The company can not be allowed to become the judge between Fisher and Barnett, and then decide in Barnett's favor, put itself in Barnett's place, and by kind of duress force Fisher to yield—enforce against Fisher a pressure Barnett could not enforce.

Careful examination of the record satisfies us that the defendants' view of the case as thus expressed is somewhat distorted. Burnett was a member of the plaintiff company. He sold his farm to the defendant Fisher, and executed a warranty deed therefor in the latter part of November, 1909. The theory of appellants is that the warranty deed as a matter of law carried to the grantee the membership in the plaintiff company as an appurtenance to the land. This claim is based to some extent, also, upon the provisions of section 14 of the articles of the company. It is clear that, in the absence of section 14 of the articles, the mere conveyance of the land by warranty deed could not of itself confer membership upon the grantee in the plaintiff company. It is conceded by appellees that the sale of the land to Fisher carried to him a right or option to purchase the "share" of Burnett, and to become a member of the plaintiff company. The trial judge was justified in finding from the affidavits before him that in the negotiations for the sale of the land Burnett had solicited Fisher to buy his "share" in the plaintiff company, and that Fisher declined to do so. For the first year after the purchase, Fisher's tenant paid to Burnett the rental provided for in section 14. In the spring of 1910 the company refused to buy from Burnett because it desired that Fisher should buy the same and become a member. One year later it bought the share from Burnett under the provisions of section 14 for $24. It knew at this time that Fisher claimed that his warranty deed carried all of Burnett's rights to member-

ship in the plaintiff company, and that he refused to purchase it in any other way, and refused to pay rent therefor. The plaintiff company has always been ready and willing to admit Fisher to membership upon payment for the "share," and otherwise willing also to permit him and his tenant, Struble, to use the phone upon payment of the usual rent. The defendants refuse to do either. The sum of $24 therefore measures the full substance of this controversy. If the plaintiff company made itself a judge of the controversy between Burnett and Fisher, it did no more than the defendants forced it to do in protection of its own rights. Under the provisions of section 14, an option was reserved to the company to purchase such share. A failure to exercise such option would amount, under such section, to an implied permission to Burnett to sell to whomsoever he could. The company had a right under such section to refuse such permission by exercising such option itself, and there is nothing in the record to impeach its good faith in such course. Such course on the part of the company did not settle or prejudge any controversy as between Burnett and Fisher. The plaintiff company was justified in refusing to become involved in such controversy, and to require the parties to it to settle it between themselves. If Fisher's contention is sound that he purchased the share from Burnett by force of his warranty deed, he had an abundant remedy as for breach of warranty after the sale by Burnett to the company and he could have safely paid the company the $24 which it paid Burnett in exercising its option. By this manner he could have saved himself the complaint that the company made itself a judge of the controversy. On the other hand, if the company had assumed to accept his contention and to receive him into membership on the strength thereof, it could not escape a part in the controversy. In such case it must apparently decide to whom the share belonged. The company did not arbitrarily refuse membership to Fisher. It

recognized his right under section 14 to purchase Burnett's share. But it insisted upon an uncontroverted purchase, and not a controverted one, before accepting Fisher into membership in lieu of Burnett. It was a *bona fide* and reasonable exercise of its power over its own membership. Presumptively it could not accept Fisher into membership in lieu of Burnett without Burnett's consent. It never had Burnett's consent. Section 8 of the articles provides for a record of stockholders, and that no stockholder shall be released from the liabilities of the company "until the change be indorsed on the records by the secretary." Whatever rights Fisher may have acquired under his warranty deed, it is clear that he did not thereby become a *de facto* member of this association. Further action was necessary on his part for that purpose. He could not be deemed a member against his will by mere force of his warranty deed. And in like manner some action was necessary on the part of the plaintiff company indicating its assent to the change of membership. We had occasion to consider this question to some extent in *Staples v. Hobbs,* 145 Iowa, 114. We there held that the alleged purchaser had not established his membership in the company. Applying to the case before us our holding in the *Staples* case, it is quite clear that Fisher has never become a member of the plaintiff company. His right to connect with the telephone line is dependent upon his membership. The plaintiff company has been guilty of no arbitrary act or bad faith to prevent his acquiring membership in a proper way. The only relief he prays for in his cross-bill is that the plaintiff company be enjoined from interfering in any way with his connections with the telephone line. Upon the record before us, he is not entitled to such relief and the trial judge properly so found.

II. It is strongly urged that the granting of a temporary writ of injunction was an abuse of power, regardless of the final merits of the case, and that such writ should

be dissolved. It will be noted that both parties prayed for such writ. From a bird's-eye view of the case it is quite apparent that one party or the other was entitled to the writ. If the defendants were entitled to it, the plaintiffs were not. And, if the defendants were not entitled to it, there can not be much substance to the claim that plaintiffs were not. The plaintiffs brought their suit in equity for an injunction as an independent remedy under the provisions of Code, section 4354. They prayed a temporary writ, and this was issued under the provisions of sections 4355 and 4356. Our discussion in the preceding paragraph is a sufficient statement of the record to show that the trial judge was justified in granting the temporary writ of injunction. On this question we need add nothing to what has been said in our previous cases. *Ladd v. Osborne,* 79 Iowa, 93; *Tantlinger v. Sullivan,* 80 Iowa, 218; *Price v. Baldauf,* 82 Iowa, 677; *Troe v. Larson,* 84 Iowa, 652; *Halpin v. McCune,* 107 Iowa, 494; *Keil v. Wright,* 135 Iowa, 383.

No other question is presented for our consideration. The order of the trial court is therefore,—*Affirmed.*