COMMONWEALTH *vs.* WILLIAM H. PERLEY.

Essex.   January 25. — February 24, 1881.   LORD & FIELD, JJ., absent.

A complaint, under the St. of 1869, *c.* 384, § 19, for fishing in a pond, in which fishes are lawfully artificially cultivated, without the consent of the proprietors, cannot be maintained, if the fishes are cultivated by lessees under leases signed by some only of the proprietors.            *

COMPLAINT on the St. of 1869, *c.* 384, § 19, to the First District Court of Essex, for illegally fishing in Humphrey's Pond, a great pond which is partly in Lynnfield and partly in Peabody. At the trial in the Superior Court, on appeal, *Wilkinson*, J. directed the jury to return a verdict of guilty; and the defendant alleged exceptions, which, so far as material to the point decided, appear in the opinion.

*G. H. Towle*, for the defendant.

*S. B. Ives, Jr.*, (*G. Marston*, Attorney General, with him,) for the Commonwealth.

SOULE, J. In the view which we take of this case, it is not necessary to decide the question, which was discussed at the argument, whether the grant to Humphrey by the General Court in the year 1635 gave him the exclusive right to fish in the great pond now known as Humphrey's Pond; nor the further question, whether that right, if given to him, passed to the present owners of the land which surrounds the pond. If the exclusive right to fish did not vest in Humphrey, the pond stands like all other great ponds in the Commonwealth which have not been specially granted by law nor leased by the commissioners of inland fisheries, and the fishery thereof is public, and the defendant committed no offence in fishing there. St. 1869, c. 384, § 8.

If, on the other hand, the exclusive right of fishery in this pond was granted to Humphrey, and passed from him to the present owners of the land surrounding the pond, the government failed to make a case against the defendant. The leases were not executed by all the owners of the shore of the pond. Those who did not execute them retained the same right to fish in the pond which they had before any lease was given. The fish which were put into the pond by the lessees, and the increase of such fish, had the whole extent of the pond to swim in, and the owners who were not lessors had the whole extent of the pond to fish in. It was impossible, therefore, that there should be an absolute ownership of those fishes by the lessees. The St. of 1869, c. 384, under which the complaint in this case was made, provides, in § 7, that the riparian proprietors of any pond less than twenty acres in extent shall have the exclusive control of the fisheries therein; so that they have the same rights which the owners of the shore of Humphrey's Pond have if Humphrey took by his grant the exclusive right of fishing therein, and it passed to the present owners of the shore. Now it is clear that, so long as any of these owners has the right to fish, there can be no exclusive or absolute property in any one in the fish going at large in the pond. Undoubtedly all the owners might unite in leasing the fishery to one of their

number, or to a stranger, and so give him the exclusive right and the right to propagate fish therein by artificial means, and he would then have the absolute ownership of the fish so propagated, because no one else would have the right to meddle with them, and the statute says that fish so propagated shall be the absolute property of the person propagating or maintaining them. § 18. The same absolute ownership, and the same right to propagate by artificial means, exists where a riparian owner encloses the waters of a stream, within the limits of his own premises, for the cultivation of fish, provided he does not shut off the passage for migratory fish naturally frequenting such waters. § 16. The absolute ownership created by the statute necessarily exists only where and so long as he who propagates or cultivates the fish keeps them within a territory over which he has absolute control; as soon as he permits them to pass into territory where others have rights of fishery, equal to or greater than his, his ownership is gone, because they may then be rightfully taken by others without his consent. The right of fishery which one has in waters where the fishery is otherwise ' public or unprotected by statute is not affected by the fact that another, who has a like right, has seen fit to propagate fishes artificially in the waters.

The leases did not give the lessees the exclusive control of the fishery of the pond. The fishes there, both those which were propagated naturally and those which were propagated artificially, had the whole range of the pond. They were not, therefore, within the control of the lessees, but were liable to be lawfully taken out of the pond by others.

Under these circumstances, we are of opinion that they were not protected by the provisions of the statute ; and that the judge of the Superior Court erred in admitting the leases signed by only a part of the owners of the shore, and not purporting to be signed by all said owners, as evidence of the right of the lessees to propagate fishes. in the pond, and of the fact that fishes were there artificially propagated, within the meaning of the law, so as to make fishing there by a stranger a penal offence under the statute. *Exceptions sustained.*